UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRIS ADAMSON, et al., [1] | Case No. 3:21-cv-05592-TMC |
| Plaintiffs, | ORDER ON PENDING MOTIONS |
| v. | |
| PIERCE COUNTY, et al., [2] | |
| Defendants. | |

## I.    INTRODUCTION

This case returns after an appeal before the Ninth Circuit. Plaintiffs are current and former employees of Pierce County Sheriff's Office ("PCSO"). Broadly speaking, they allege that Pierce County and two members of the Pierce County Prosecuting Attorney's Office ("PCPAO" or the "Prosecutor Defendants") retaliated against them for the exercise of their First Amendment right to free speech. Most of Plaintiffs' original claims were dismissed on summary judgment, and those dismissals were affirmed on appeal. *Adamson v. Pierce County Mun.*, No.

---

[1] Chris Adamson, Jason Bray, Lucas Cole, Shaun Darby, Cynthia Fajardo, James Maas, Darrin Rayner, Elizabeth Reigle, and Ryan Olivarez (collectively "Plaintiffs").

[2] Pierce County, James Schacht, and Fred Wist (collectively "Defendants").

ORDER ON PENDING MOTIONS - 1

24-3545, 2025 WL 2181026, at *2–3 (9th Cir. Aug. 1, 2025). But the circuit court concluded that some of Plaintiffs' constitutional allegations against the Prosecutor Defendants should not have been dismissed based on absolute prosecutorial immunity. *Id.* at *1–2. The appellate court remanded the case with instructions to consider whether three specific acts by the Prosecutor Defendants were instead entitled to qualified immunity. *Id.* at *2.

Before the Court are two motions. The first is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c). Dkt. 228. The second is Plaintiffs' motion for leave to file an amended complaint. Dkt. 231. Plaintiffs' motion for leave to file an amended complaint is GRANTED in part and DENIED in part. The Court will consider the amended complaint solely for the additional factual allegations in support of the claims that remain on remand from the Ninth Circuit. But Plaintiffs will not be permitted to add new claims or reinstate those for which dismissal was affirmed. For the three sets of allegations that support Plaintiffs' claims against the Prosecutor Defendants on remand, qualified immunity does not apply at the pleading stage. Accordingly, Defendants' motion for judgment on the pleadings is DENIED.

## II.    BACKGROUND[3]

### A.    Factual History[4]

Plaintiffs are a group of current or former employees of the PCSO's Special Investigations Unit ("SIU"). Dkt. 231 ¶¶ 2.1–9; Dkt. 214 at 3. SIU was tasked with investigating

---

[3] Many of the facts have been recited in the Court's prior orders. Dkt. 24 at 2–5, Dkt. 214 at 3–12. The Court recites only the facts necessary to resolve the instant motions. As required on a motion challenging the pleadings, the Court takes Plaintiffs' factual allegations as true and draws all inferences in their favor. *See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

[4] For reasons that will be apparent later in the order, the Court recites the relevant facts from Plaintiffs' proposed first amended complaint. *See infra* Section III.A.2.

ORDER ON PENDING MOTIONS - 2

narcotics trafficking and enforcing anti-vice laws in Pierce County, Washington. Dkt. 214 at 3. Defendants James Schacht and Fred Wist (collectively "Prosecutor Defendants") were prosecutors within PCPAO while Plaintiffs worked within the SIU. Dkt. 231 ¶¶ 2.11–12. Schacht worked in management as the Chief Felony Deputy Prosecuting Attorney. *Id.* ¶ 2.11. Wist was a Deputy Prosecuting Attorney, making charging decisions and referrals regarding SIU's cases. *Id.* ¶ 2.12.

In 2019, Pierce County voters elected a new County Prosecuting Attorney, who assigned the Prosecutor Defendants to "leadership roles." *Id.* ¶ 5.1. That same year, the Washington legislature enacted what would become RCW 10.56.040. *Id.* ¶ 5.9. That statute concerns "[l]ocal protocols for the use of informants." RCW 10.56.040. SIU investigations regularly relied on information obtained from informants. *Id.* ¶ 5.18.

Plaintiff Fajardo, a member of SIU, caught the ire of Pierce County's elected Sheriff, Paul Pastor, because she had been Guild President of the union and "sued him for gender discrimination successfully." *Id.* ¶ 5.25. In 2019, Fajardo "began exploring her candidacy" for the 2020 Pierce County Sheriff election once Pastor retired as the elected sheriff. *Id.* ¶ 5.26. By 2020, it was "well known" that she would run before she formally announced her campaign on May 15, 2020. *Id.*

The 2020 election for Pierce County Sheriff would be "the first contested election . . . in approximately twenty years." *Id.* ¶ 5.27. Fajardo, who "promised to change command and run an independent office that worked with but not at the direction of the prosecutors['] office," faced PCSO's Public Information Officer Ed Troyer, the "status quo candidate" who "promised to keep Undersheriff [Brent] Bomkamp in command." *Id.* Plaintiffs "supported and campaigned for Fajardo." *Id.* ¶ 6.10.

ORDER ON PENDING MOTIONS - 3

On June 15, 2019, Undersheriff Bomkamp met with Fajardo, telling her that "SIU was doing wrong" and gave her the new PCPAO informant protocol—their implementation of RCW 10.56.040. *Id.* ¶ 5.29. Fajardo "sought clarity from PCPAO with regard to its informant policy," as it "raised more questions than it answered." *Id.* ¶ 5.31. PCPAO, specifically the Prosecutor Defendants, "ignored Fajardo all the while complaining about her work." *Id.* ¶ 5.33.

Plaintiffs stood up to the Prosecutor Defendants and "objected to PCPAO interfering with their investigations" and their attempts "to limit investigator discretion, particularly in the implementation of [RCW 10.56.040] and corresponding local policies." *Id.* ¶ 6.13.

1.      *Referral of criminal investigation to the Federal Bureau of Investigations ("FBI")*

On March 18, 2020, a prosecutor had complained to Schacht that "SIU falsified reports to include search warrants" in connection with two different narcotics investigations, one involving a subject named Benitez. *Id.* ¶ 5.63. The next day, Schacht "complained to Sheriff Pastor and Undersheriff Bomkamp," alleging that SIU "'violated [their] protocol agreements' related to informants and incentivized witnesses, which implicated state and federal criminal statutes." *Id.* ¶ 5.67. With help from Sheriff Pastor and Undersheriff Bomkamp, Schacht obtained SIU's computers and phones. *Id.* ¶¶ 5.68–69. Schacht found the following text message exchange between plaintiffs Bray and Darby regarding the Benitez investigation:

Bray: "I sure hope there something [sic] in the van because his bags were empty!"

Darby: "Rushed it."

*Id.* ¶ 5.71. From this exchange, Schacht assumed SIU planted "nearly nineteen pounds of meth" and that SIU was corrupt. *Id.* ¶ 5.72. Schacht contacted a federal prosecutor, asking them and the FBI to "adopt the case." *Id.* ¶¶ 5.68–69.

On March 24, 2020, Schacht arranged for Benitez's release from custody due to "case problems," and he informed the federal prosecutor that he was dismissing Benitez's case. *Id.*

ORDER ON PENDING MOTIONS - 4

¶¶ 5.73–74. The next day, Schacht had a proffer session with Benitez, who "admitted trafficking the nearly nineteen pounds of meth for the Mexican Cartel." *Id.* ¶ 5.75. Despite this, Schacht maintained his "false narrative" about SIU's corruption in both investigations but never prosecuted either case. *Id.* ¶¶ 5.64–65.

2.    *Kitsap County Sheriff's Department Investigation*

On April 6, 2020, at the Prosecutor Defendants' urging, Sheriff Pastor and Bomkamp had the Kitsap County Sheriff's Office ("KCSO") investigate SIU's actions in those two cases, including the Benitez case, based on the "false narrative" perpetuated by Prosecutor Defendants that SIU was corrupt. *Id.* ¶ 5.85. Plaintiffs Adamson, Nicodemus, Olivarez, Fajardo, and Darby were subjects of the investigation. *Id.*

During the investigation, the Prosecutor Defendants made "false accusations" to KCSO investigators, telling them that SIU investigators were "violating informant protocols," "locking reports to prevent charging decisions," "not giving prosecutors search warrants," "not disclosing the involvement of sources or informants," and creating "fake search warrants." *Id.* ¶ 5.87. KCSO "assumed facts" from the Prosecutor Defendants' "false narrative" while conducting the investigation. *Id.* ¶ 5.86. KCSO released a report of its findings in September 2020 to PCPAO and PCSO command, which "excerpted testimony" from the Prosecutor Defendants perpetuating the "false narrative" that SIU was "rogue, dishonest, and corrupt." *Id.* ¶¶ 5.87–88.

3.    *Communication with the Press*

Meanwhile, Tacoma-based paper The News Tribune ("TNT") began investigating SIU with information provided by PCPAO and PCSO leadership. *Id.* ¶ 5.96. TNT later published an article on July 15, 2020 entitled "Failure to follow protocol: Sheriff's drug unit investigated for alleged false reports." *Id.* ¶ 5.95. The article adopted the Prosecutor Defendants' "false corruption narrative" that Plaintiffs "were under investigation for violating departmental

protocols," including "falsifying records and conducting improper searches." *Id.* ¶ 5.96. The article included Plaintiffs' names and identified them as "undercover operatives working cartel level cases," which "placed them and their families at a heightened risk of deadly harm." *Id.* ¶¶ 5.97–98.

### 4.    Aftermath

As a result of the Prosecutor Defendants' "false corruption narrative," PCSO took "adverse action" against Plaintiffs "at the direction of PCPAO." *Id.* ¶ 5.99. Plaintiffs were transferred out of SIU and PCSO closed the unit. *Id.* Plaintiffs were given "undesirable work and assigned meaningless tasks." *Id.* ¶ 5.101. With their reputations ruined, Plaintiffs struggled to get new jobs in law enforcement, and many were forced to retire early. *Id.* ¶ 6.7. Having had to "defend against the accusations," Fajardo lost the election to replace Sheriff Pastor. *Id.* Plaintiffs lost overtime, retirement income, their good reputations, and the opportunity to apply for positions elsewhere. *Id.* ¶¶ 5.102–114.

**B.    Procedural History**

In their August 18, 2021 complaint, Plaintiffs sought damages and both declaratory and injunctive relief against Defendants. Dkt. 1-2 at 47–67. Before the Honorable David G. Estudillo, Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on May 25, 2022. Dkt. 24. Judge Estudillo granted Defendants' motion in part and denied it in part. *Id.* at 25–26. Most importantly for the instant motions, Plaintiffs' Section 1983 claims against the Prosecutor Defendants were dismissed based on Judge Estudillo's conclusion that their alleged acts were shielded by absolute immunity. *Id.* at 11, 17.

The case was reassigned to the undersigned judge on August 31, 2023. Dkt. 85. On March 11, 2024, Defendants moved for summary judgment on the remaining claims. Dkt. 131.

ORDER ON PENDING MOTIONS - 6

The Court granted Defendants' motion and dismissed the remaining claims on May 28, 2024. Dkt. 214 at 30.

Plaintiffs appealed both the Rule 12(b)(6) and summary judgment dismissals to the Ninth Circuit. Dkt. 217. The rulings were affirmed in part and reversed in part. *Adamson,* 2025 WL 2181026, at *3. The appellate court affirmed the rulings on Defendants' motion for summary judgment and most of the rulings on Defendants' motion to dismiss under FRCP 12(b)(6). *Id.* at *1. But the circuit reversed the dismissal of some theories of Plaintiffs' Section 1983 claims against the Prosecutor Defendants. *Id*. More specifically, the appellate court ruled that absolute immunity did not apply to these three acts by the Prosecutor Defendants: (1) their "alleged communication with the press"; (2) their "statements to Kitsap County investigators"; and (3) their "referral of a criminal investigation to the FBI." *Id*. The appellate court remanded the case for this Court to consider whether the three acts that "f[e]ll outside of the prosecutorial function" were instead "entitled to qualified immunity." *Id.* at *2.

Once this Court regained jurisdiction, Defendants moved for judgment on the pleadings under Rule 12(c). Dkt. 228. Plaintiffs opposed the motion, while also moving for leave to amend their original complaint. *See* Dkts. 229, 231. Defendants opposed Plaintiffs' motion for leave to amend. Dkt. 233. This Court now considers both motions together.

### III.    DISCUSSION

Before considering Defendants' motion for judgment on the pleadings, the Court will consider Plaintiffs' motion to amend their complaint.

**A.    Plaintiffs' motion for leave to amend the complaint**

*1.    Legal Standards*

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave

ORDER ON PENDING MOTIONS - 7

when justice so requires." The Court must apply this policy "with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). The Court has discretion to grant or deny a request to amend but must provide justification when it denies a request. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion to amend under Rule 15(a)(2) "generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011); *see also Foman*, 371 U.S. at 182. "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981); *see also Chudacoff*, 649 F.3d at 1152.

        2.        *Plaintiffs' motion for leave to amend the complaint is GRANTED in part.*

Plaintiffs make several arguments in support of their motion for leave to amend. First, leave should be granted "so the case may be more efficiently presented and tried post remand where absolute immunity was sustained in part and denied in part and remanded for analysis of qualified immunity." Dkt. 231 at 2. Second, "more facts are now available" to assist the Court in evaluating the qualified immunity defense. *Id.* Third, there is no undue delay, bad faith, or prejudice. *Id.* at 3.

In response, Defendants ask the Court to deny Plaintiffs' request for several reasons. First, the proposed complaint is "disorganized and vague and asserts factual allegations already given immunity and/or includes claims already dismissed." Dkt. 233 at 1–2. Second, the proposed complaint seeks to "resurrect a *Monell* liability claim" for which the Ninth Circuit already affirmed dismissal. *Id,* at 4–5. Third, the new allegations of prosecutor conduct in the proposed complaint are "also given absolute immunity and cannot be the basis for [Section] 1983 liability." *Id.* at 5–6.

The Court grants Plaintiffs' motion in part. Motions to amend, generally, "shall be denied only upon a showing of bad faith, undue delay, futility, or undue prejudice to the opposing party," which Defendants have not established. *Chudacoff*, 649 F.3d at 1152. Plaintiffs seek to amend their surviving claims based on information they learned during discovery for the claims no longer at issue. That is a reasonable basis to amend a pleading that was originally filed in 2021. *See* Dkt. 1-2. As a result, this Court will consider the proposed complaint (filed as an attachment to Plaintiffs' motion) as the operative complaint.

This amendment, however, does not allow Plaintiffs to pursue claims, theories, or defendants that have already been dismissed from this litigation. Their motion must therefore be denied in part. The Court will consider the amended complaint only for its new factual allegations in support of the Section 1983 claims against the individual Prosecutor Defendants that were remanded from the Ninth Circuit. A district court "has no power to expand [an appellate court's] remand beyond the boundary ordered by [the appellate] court." *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1173 (9th Cir. 2006). Given the limited scope in which this case was remanded, "to determine whether [the] Prosecutor Defendants are entitled to qualified immunity" for three specific acts, the Court will not permit the rehabilitation of claims that were dismissed and then affirmed on appeal. *Adamson*, 2025 WL 2181026, at *2.

With the newly operative complaint, venue remains proper, and the Court maintains subject matter jurisdiction. Dkt. 231 ¶ 3.1. The claims on remand concern federal question jurisdiction under 28 U.S.C. § 1331. *Id.* ¶ 3.2.

## B.    Motion for Judgment on the Pleadings

The Court must next consider the fate of Defendants' motion for judgment on the pleadings, because it was made when the former complaint was operative. A motion for judgment on the pleadings "faces the same test as a motion [to dismiss] under Rule 12(b)(6)."

ORDER ON PENDING MOTIONS - 9

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). "When an amended complaint is filed while a motion to dismiss is pending, it generally moots the motion to dismiss." *Oliver v. Alcoa, Inc.*, No. C16-0741JLR, 2016 WL 4734310, at *2 n.3 (W.D. Wash. Sept. 12, 2016). However, when the newly operative complaint is "substantially identical" to the prior complaint, it will not moot the motion. *Id.*

Given the narrow issues on remand, the Court finds the newly operative complaint "substantially identical" to the prior complaint. If the newly operative complaint maintains the same issues raised in the motion, a court can consider the motion in light of the newly operative complaint. *Bossart v. County of King*, No. 2:25-CV-00975-JNW, 2025 WL 2084411, at *1 (W.D. Wash. July 24, 2025). Defendants' motion for judgment on the pleadings is not moot, and the Court will evaluate it based on the allegations in the newly operative complaint.

1.    *Legal Standards*

a)    *Rule 12(c)*

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The legal standard for Rule 12(c) is "substantially identical" to the standard for a motion to dismiss under Rule 12(b)(6) because under both rules, "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quotation marks and citation omitted).

As with a motion to dismiss, to survive a motion for judgment on the pleadings, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

b)    *Qualified Immunity*

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). In analyzing a qualified immunity defense, the Court must determine: (1) "whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right," and (2) "whether the right in question was clearly established at the time of the violation." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 566 U.S. at 664 (citation modified). Although the qualified immunity doctrine does not "require a case directly on point" to show that a right is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

While the plaintiff bears the burden of proving a right was "clearly established" at the time of the allegedly impermissible conduct, the Court should draw on its "full knowledge of relevant precedent rather than restricting [its] review to cases identified by the plaintiff." *Gordon v. County of Orange*, 6 F.4th 961, 969 (9th Cir. 2021). For a right to be clearly established, "the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Id.* (quotation marks and citation omitted).

The two steps need not be analyzed sequentially; judges may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 234 (2009).

   2.      *Defendants' motion for judgment on the pleadings is DENIED.*

Neither party's briefing properly addresses the questions on remand. The Ninth Circuit determined that the Prosecutor Defendants were not entitled to absolute immunity for three acts: "alleged communication with the press, statements to Kitsap County investigators, and referral of a criminal investigation to the FBI." *Adamson*, 2025 WL 2181026, at *1. On remand, the appellate court instructed this Court to "determine whether [the] Prosecutor Defendants are entitled to qualified immunity" for these three acts. *Id.* at 5.

This inquiry is concerned solely with Plaintiffs' Section 1983 claims of First Amendment retaliation by the Prosecutor Defendants. *See* Dkt. 231 ¶¶ 6.1–6.65.[5] Plaintiffs allege that the Prosecutor Defendants had spread a false narrative that Plaintiffs were corrupt with these three

---

[5] Plaintiffs also bring a conspiracy claim, based on their allegation that the Prosecutor Defendants "agreed to" and "acted in concert with the specific intent to violate plaintiffs' rights," but it is premised on the underlying First Amendment violation and neither party identifies a basis for analyzing it separately at this stage of the litigation. *See* Dkt. 231 ¶¶ 6.66–6.80.

acts, and that these three acts were retaliation for their support of Fajardo in the sheriff's election and their objections to PCPAO's relationship with SIU. Dkt. 231 ¶ 6.1. They contend this resulted in Fajardo losing the Sheriff's election, the closing of SIU, damage to the reputation of its members, lost earnings, frivolous internal investigations, emotional harm, and at least some early retirements. *Id.* ¶¶ 5.102–115, 6.7.

### a)      *Constitutional Violation*

To determine whether the Prosecutor Defendants are entitled to qualified immunity, the Court must first consider whether "the facts alleged, taken in the light most favorable to [Plaintiffs], show that [the Prosecutor Defendants] conduct violated a constitutional right." *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012) (citation omitted).

"The First Amendment shields public employees from employment retaliation for their protected speech activities." *Id.* "Out of recognition for the State's interests as an employer in regulating the speech of its employees, however, we must arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (first quoting *Connick v. Myers*, 461 U.S. 138, 140 (1983); then quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). Courts use a five-step, burden-shifting framework to weigh the government's legitimate interests against the First Amendment rights of its employees. *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1137 (9th Cir. 2025). A court must consider:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

ORDER ON PENDING MOTIONS - 13

*Greisen v. Hanken*, 925 F.3d 1097, 1108 (9th Cir. 2019) (citing *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). "The plaintiff bears the burden on the first three questions," and if that burden is met, "the burden shifts to the defendant on the last two questions." *Id.* Only if the government fails both the fourth and fifth steps does the plaintiff establish a First Amendment violation. *Id.*

Plaintiffs contend that they spoke on matters of public concern: their support of Fajardo in the election, their problems with PCSO's independence from PCPAO, and their issues with PCPAO's implementation of RCW 10.56.040. Dkt. 231 ¶¶ 6.21–32. Defendants do not dispute that these topics were of public concern. *See* Dkts. 228, 230. The Court finds that Plaintiffs have plausibly alleged their speech dealt with matters of public concern, specifically "inefficiency in managing and operating government entities" and support for a rival sheriff candidate. *Anthoine v. N. Cent. Ctys. Consortium*, 605 F.3d 740, 748 (9th Cir. 2010); *see Burch v. City of Chubbuck*, 146 F.4th 822, 833 (9th Cir. 2025) (city entity's employee's public support for mayoral opponent "addresses a matter of public concern.").

Next, the Court must consider whether Plaintiffs' speech was given in their capacity as private citizens or pursuant to their official job duties. *Karl*, 678 F.3d at 1071. Plaintiffs argue that they "spoke as private citizens when objecting to PCPAO policies" and raising concerns with PCSO supervisors, PCPAO, and the media, which was not an "essential function[] of their jobs." Dkt. 231 ¶¶ 6.34–36. Defendants do not dispute that Plaintiffs spoke as private citizens. *See* Dkts. 228, 230. To determine whether a plaintiff's speech was made pursuant to their duties as a public employee, courts must "look beyond the four corners of his formal job description and conduct a 'practical' and 'fact-intensive' inquiry using" these three factors: "(1) asking whether or not the employee confined his communications to his chain of command; (2) examining "the subject matter of the communication; and (3) asking whether the employee

spoke in direct contravention to his supervisor's orders." *Burch*, 146 F.4th at 834 (quoting *Dahlia v. Rodriguez*, 735 F.3d 1060, 1074–76 (9th Cir. 2013)) (citation modified).

The first *Dahlia* factor generally favors Plaintiffs. Plaintiffs complained to the Prosecutor Defendants, both of whom are outside their chain of command. Dkt. 231 ¶ 6.13. Plaintiffs' support for Fajardo in the election also concerned the voting public rather than their chain of command. The second *Dahlia* factor also favors Plaintiffs. This factor "asks whether the public employee's speech is more akin to a 'routine' report or function of their position, rather than an attempt to raise alarm bells on an issue not normally within the employee's purview." *Burch*, 146 F.4th at 834 (quoting *Dahlia*, 735 F.3d 1075). Routine speech is "less likely to be protected." *Id.* Plaintiffs' complaints to the Prosecutor Defendants about their implementation of RCW 10.56.040 and how it affected PCSO's independence were not "routine" functions of their jobs; nor was their campaigning on behalf of Fajardo. The third *Dahlia* factor is inconclusive. It is unclear from the complaint whether Plaintiffs' support for Fajardo's campaign, or their objections to the Prosecutor Defendants' implementation of RCW 10.56.040, were done "in direct contravention to [their] supervisor's orders." The *Dahlia* factors are assessed in their totality. *Id.* Based on that assessment, the Court concludes that Plaintiffs have plausibly alleged their speech was not made pursuant to their official duties as SIU members.

The Court must next consider whether Plaintiffs suffered an adverse employment action and whether their "protected speech was a substantial or motivating factor in the adverse employment action." *Greisen*, 925 F.3d at 1108. The Court finds that although PCPAO was not the Pierce County agency that directly employed Plaintiffs, the Prosecutor Defendants' alleged statements to the press and KCSO, as well as their referral to the FBI, are sufficiently pled as adverse employment actions. *Greisen*, 925 F.3d at 1114–15 (a First Amendment retaliation claim may be based on retaliatory speech when "that speech is part of a campaign of harassment

designed to burden the plaintiff's protected expression," such as "spurious investigations" and "defamatory statements to the media with the intent of discrediting [plaintiff].").

The Court also finds that Plaintiffs have plausibly alleged that the "substantial or motivating factor" behind those three acts was retaliation. "To show that retaliation was a substantial or motivating factor behind an adverse employment action, a plaintiff can (1) introduce evidence that the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) introduce evidence that the employer expressed opposition to the speech; or (3) introduce evidence that the proffered explanations for the adverse action were false and pretextual." *Anthoine*, 605 F.3d at 750. Plaintiffs argue that under the second prong, "timing supports the motive," as the Prosecutor Defendants "made their false statements" after Fajardo was running for office. Dkt. 229 at 19. At least at this stage of the litigation, the Court agrees.[6] Two things occurred in 2019: it became well known that Fajardo would likely run for sheriff, Dkt. 231 ¶ 5.26, and Plaintiffs complained about PCPAO's relationship with SIU, *Id.* ¶ 6.11. Soon after, Schacht referred Plaintiffs to the FBI on March 29, 2020. *Id.* ¶ 5.68. Fajardo would formally announce her campaign on May 15, 2020, which Plaintiffs publicly supported. *Id.* ¶ 5.26. Nearly two months later, Schacht provided allegedly false statements about Plaintiffs in an interview with KCSO, and TNT published an article about SIU using the Prosecutor Defendants' "false narrative." *Id.* ¶¶ 6.96, 6.118. Plaintiffs' allegations concerning their speech and the Prosecutor Defendants' actions are close enough in time to allow an inference that the actions were retaliatory. *Ellins v. City of Sierra*

---

[6] The Court notes that in earlier phases of this litigation, Plaintiffs were not able to ultimately support with evidence their allegations that the individual PCSO Defendants took adverse actions based on Plaintiffs' political support for Fajardo. See Dkt. 214 at 17–19. But the Court must review the amended complaint based solely on the allegations against the Prosecutor Defendants that have yet to be the subject of focused discovery because they were previously dismissed at the Rule 12(b)(6) stage.

ORDER ON PENDING MOTIONS - 16

*Madre*, 710 F.3d 1049, 1062 (9th Cir. 2013) ("depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation.") (citation modified); *Allen v. Iranon*, 283 F.3d 1070, 1077–78 (9th Cir.2002) ("an eleven-month gap in time is within the range that has been found to support an inference that an employment decision was retaliatory."). Plaintiffs have also alleged extensively throughout their complaint that the proffered explanations for Defendants' actions were false and pretextual.

Because Plaintiffs have satisfied the first three steps, the burden shifts to the government to demonstrate either step four or five: "that it had an adequate justification for treating the employee differently from any other member of the general public, or alternatively, that it would have reached the same adverse employment decision even in the absence of the protected speech." *Burch*, 146 F.4th at 833 (citation modified). Only if the government fails both the fourth and fifth steps does the plaintiff establish a First Amendment violation. *Id.*

Defendants make an argument only under step four, contending that there was "adequate justification for shutting down the SIU" and that SIU's closing was not motivated by Fajardo's campaign. Dkt. 230 at 2. Although these arguments prevailed at the summary judgment stage for Pierce County and the individual PCSO defendants, *see* Dkt. 214 at 17–19, 22–25, they are not persuasive in this context. The adverse actions before the Court on remand do not include the disbanding of SIU. The Court finds that Defendants have failed to meet their burden. Accordingly, Plaintiffs have successfully alleged that the Prosecutor Defendants violated a constitutional right.

    b) *The right in question was clearly established at the time of the violation.*

To complete the analysis of whether qualified immunity applies to the Prosecutor Defendants' three acts, the Court must consider "whether the right in question was clearly

established at the time of the violation." *Tolan*, 572 U.S. at 656. To determine that a right was "clearly established," the court "must identify precedent as of [the date of the alleged violation] that put [the defendant] on clear notice" that his or her actions were unconstitutional. *S.B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017). "[A] case directly on point [is not required], but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

The three acts considered on remand occurred roughly from March to July 2020. In 1968, the Supreme Court ruled in *Pickering* that public employees have a First Amendment right to be free from retaliation for commenting on matters of public concern, even when the protected comments are critical of their employers. 391 U.S. at 571. In 2019, the Ninth Circuit applied *Pickering* in a published opinion in *Greisen v. Hanken*. 925 F.3d 1097 (9th Cir. 2019). In *Greisen*, a city's chief of police raised concerns about policies and practices of the city manager; in response, the city manager took adverse actions against the chief that included "initiat[ing] three investigations of Greisen" and "releasing information about the investigations to the media." *Id.* at 1104; *see also id.* at 1105 (Hanken "arranged for an outside public agency to investigate Greisen" about alleged improper supervision of a police pursuit); *id.* at 1106 (Hanken provided information to the media about the investigation implying Greisen was corrupt).

The Ninth Circuit found that Hanken was not entitled to qualified immunity on each element of the *Pickering* test, even for acts that occurred much earlier, in 2012 and 2013. *See id.* at 1111–14. In particular, the Ninth Circuit held it was clearly established that "a First Amendment retaliation claim may be based on retaliatory speech when that speech is part of a campaign of harassment designed to burden the plaintiff's protected expression," *id.* at 1113–14 (citing *Allen v. Scribner*, 812 F.2d 426 (9th Cir. 1987)); that "retaliatory speech may serve as the basis for a First Amendment retaliation claim when it 'intimates that some form of punishment

or adverse regulatory action would follow,'" *id.* at 1114 (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009)); and that Hanken was on notice that "a campaign of harassment . . . that included not only defamatory communications with the press but also . . . the instigation of three spurious investigations" would violate clearly established First Amendment law. *Id.* In this case, *Greisen* and the cases cited therein would place the Prosecutor Defendants on notice that their alleged actions in 2020 violated clearly established law. They are therefore not entitled to qualified immunity at this stage of the litigation.

## IV.    CONCLUSION

For the reasons explained above, the Court ORDERS as follows:

1.    Plaintiffs' motion for leave to file an amended complaint (Dkt. 231) is GRANTED IN PART and DENIED IN PART.

2.    Defendants' motion for judgment on the pleadings (Dkt. 228) is DENIED.

3.    Plaintiffs shall file a clean copy of the amended complaint provided in Dkt. 231 no later than May 13, 2026. Defendants must answer the complaint within the time set by Federal Rule of Civil Procedure 15(a)(3).

4.    Consistent with the scope of the Ninth Circuit's remand, the only operative claims in the amended complaint are the Section 1983 claims against the individual Prosecutor Defendants: James Schact and Fred Wist. The previous dismissals of all state-law claims against Pierce County, the *Monell* claims against Pierce County, and all claims against Paul Pastor and Brent Bomkamp were affirmed on appeal. Those claims are no longer part of this litigation, and the Clerk is directed to terminate Pastor, Bomkamp, and Pierce County as Defendants; Schact and Wist shall be reinstated as the only remaining Defendants.

ORDER ON PENDING MOTIONS - 19

5.    The parties are directed to meet and confer and file a joint status report no later than May 20, 2026 proposing a new trial date and case schedule for the remainder of this litigation.


Dated this 6th day of May, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER ON PENDING MOTIONS - 20